IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 25, 2005

## TIM HOLT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Hancock County**
**No. CR-2491     James E. Beckner, Judge**

_____

**No. E2005-00587-CCA-R3-PC - Filed January 27, 2006**

_____

The Appellant, Tim Holt, appeals the judgment of the Hancock County Criminal Court denying post-conviction relief.  Holt was convicted of first degree murder and sentenced to life imprisonment. On appeal, Holt argues that he was denied his Sixth Amendment right to the effective assistance of counsel.  After review, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Wayne R. Stambaugh, Morristown, Tennessee, for the Appellant, Tim Holt.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Connie Trobaugh, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Procedural History

The Appellant's incarceration stems from his jury conviction for the first degree murder of William Marshall Haas on August 21, 2001, in Hancock County.  The proof at trial established that the Appellant "followed the victim for three miles, pulled beside the victim's vehicle and shot him." _State v. Tim Holt_, No. E2002-02471-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Nov. 17, 2003). After shooting the victim at close range with a shotgun, the Appellant returned home and mowed his yard.  _Id._  The Appellant confessed to a TBI agent that he killed the victim.  _Id._  The Appellant's wife testified that her thirty-six-year-old husband had been using methamphetamine for the past year and believed that the victim was an undercover agent who was spying on their house.  _Id._  However, the proof established that the victim drove by the Appellant's residence daily because he delivered newspapers.  _Id._  After the victim was murdered, it was learned that the victim was also a Hancock

County constable. *Id*. A mental evaluation established that the Appellant was competent to stand trial and that an insanity defense could not be supported. *Id*.

The Appellant filed a *pro se* petition for post-conviction relief alleging, among other grounds, ineffective assistance of counsel. Counsel was appointed, and an amended petition was filed on November 29, 2004. A post-conviction hearing was held on December 6, 2004, at which the Appellant, trial counsel, and an investigator in the case testified.

The Appellant testified that at the time of the homicide, he had a drug problem for which he had been previously treated and that he believed that certain individuals were brainwashing him and threatening his family. The Appellant admitted that he met with trial counsel and his investigator on several occasions prior to trial and discussed possible defenses to the charges against him, as well as various aspects of the case. The Appellant did not dispute that during their first meeting he told trial counsel that he had in fact shot the victim and had made a statement to that effect to law enforcement officers. The Appellant admitted that he refused to plead guilty in the case and that he chose to testify, although he said the decision was reached because trial counsel told him it would "work out better in court." Nonetheless, the Appellant acknowledged that the trial court reviewed his rights with him prior to his testimony and that he told the judge that his decision to testify was voluntary. Nonetheless, the Appellant stated that "I feel like there should have been a lot more investigating went on" in the case.

Lawrence Smith, an investigator with the public defender's officer, testified that he met with the Appellant on numerous occasions and discussed the case. Smith testified that he fully investigated all claims made by the Appellant, including claims against law enforcement officials and various drug dealers in the community. However, Smith stated that he found no proof to support the Appellant's accusations of threats by any individuals. As a result of their investigation, Smith and trial counsel received death threats, but Smith stated that the threats did not affect their investigation in any manner.

Trial counsel, who was appointed to represent the Appellant, testified that he assembled a defense team which included his investigator, a neuropsychologist, a jury consultant, and a firearms expert. Counsel noted that both he and his investigator met with the Appellant several times in order to ensure face to face communication because of the Appellant's inability to read and understand. Trial counsel said that he and his team spent "hundreds of hours" preparing for trial. Counsel stated that his trial strategy was based upon the Appellant's actions: "I assumed that [the Appellant] would testify in the manner he said he was going to testify, and the strategy was to convince the jury that he did not intend to kill Mr. Haas, that it was basically a mistake." He further developed a mitigation strategy to utilize at trial which involved the use of the psychologist, whose tests revealed that the Appellant was borderline mentally retarded. Counsel further explained that it was the Appellant who wanted to testify and tell his side of the story to the jury. Counsel also related that the death threats he and his investigator received had no effect on his handling of the case. At the conclusion of the hearing, the post-conviction court denied the petition.

**Analysis**

On appeal, the Appellant has raised the single issue of ineffective assistance of counsel, asserting that trial counsel's representation was deficient because: (1) trial counsel failed to properly prepare for trial; (2) trial counsel abandoned a previously filed motion for change of venue due to pretrial publicity; and (3) trial counsel failed to formally object to the State's use of a void indictment. To succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. T.C.A. § 40-30-110(f) (2003). The Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id.* at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law*, are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id*.

## I. Trial Preparation

First, the Appellant alleges that trial counsel was ineffective in that he failed to properly prepare for trial. Specifically, the Appellant argues that trial counsel: (1) failed to interview key defense witnesses due to threats made against trial counsel and his staff; (2) failed to properly instruct the Appellant regarding his constitutional right to testify, as well as properly prepare the Appellant to give testimony at trial; and (3) failed to properly administer and/or conduct ballistic tests on the alleged weapon used by the Appellant.

**(a) Failure to Interview Witnesses**

The Appellant alleges that trial counsel failed to interview certain key witnesses regarding the alleged death threats which were made against the Appellant and his family by methamphetamine dealers because of death threats against trial counsel and his office staff. Smith testified that despite the sometimes confrontational events, every single allegation made by the Appellant was investigated.

In denying the Appellant's petition, the post-conviction court found:

> As to whether or not counsel . . . was effective in his representation of the petitioner, this Court finds that [trial counsel] and his defense team . . . communicated with the petitioner face to face on a regular basis, spending many hours discussing every possible strategy, piece of evidence, witness, avenue of investigation, motion, plea bargain, and anything else that could possibly or conceivably be pursued. No stone was left unturned. No strategy or theory was left uninvestigated.

We find nothing in the record to preponderate against the post-conviction court's findings. Moreover, the Appellant's argument must also fail because the Appellant has failed to present any proof at the post-conviction hearing, other than his own bare assertions, as to whom trial counsel failed to interview and what they would have testified to had they been called. When a petitioner claims that trial counsel failed to interview or present a witness in support of his defense, the Appellant should present that witness at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Because the Appellant failed to produce the witnesses, or even produce their names, it would be speculative to conclude that their testimony would have affected the outcome of the trial. Thus, this allegation falls far short of clear and convincing evidence.

**(b) Right to Testify**

Next, the Appellant asserts that trial counsel failed to instruct him of his constitutional right to testify or not testify in his own defense. He asserts that he testified because trial counsel wanted him to do so.

Trial counsel testified that the Appellant insisted upon going to trial and placing his side of the story before the jury. Counsel testified that he reviewed and explained the Appellant's right to him in great detail, going so far as to prepare a written document, written in a way which was understandable, which was signed and acknowledged by the Appellant. Trial counsel specifically testified that the document was read to the Appellant, going "through every one of those words," prior to him signing it. In an abundance of caution, trial counsel also requested the trial court voir dire the Appellant regarding his right to testify, prior to his taking the stand, which the court did.

We find nothing in the record to suggest that the Appellant did not personally make the decision to testify in his case. Included in the record is a signed document which specifically states that the Appellant knew he could refuse to testify if he so chose. Trial counsel testified that he reviewed this document with the Appellant, explaining it in great detail, despite the fact that the Appellant testified he did not recall this occurring. Moreover, the Appellant admitted that the trial court reviewed his rights with the Appellant prior to his testifying. As such, we find this issue without merit.

### (c) Ballistic Testing

The Appellant also asserts that trial counsel was ineffective for failing to properly administer and/or conduct ballistic tests on the alleged weapon used by the Appellant in the homicide. Specifically, the Appellant asserts that "[o]ne of the most crucial parts of that investigation was to properly conduct ballistic tests on the alleged murder weapon through different methods of fragment identification and whether it was possible that particular weapon could have been fired at the angle as alleged by the State of Tennessee in it's theory of prosecution. It was critical for [trial counsel] to test the actual possibility of the firing of the alleged murder weapon at a certain rate of speed and angle to determine whether [the Appellant's] alleged discharge was the one who did end the life of the victim."

In finding that trial counsel was not deficient, the post-conviction court made the following findings:

> Much has been said about the investigation of and establishment of physical evidence having to do with the positions of the vehicles and whether or not they were moving and at what position the weapon was fired and under what circumstances. The most that anyone had to go on regarding that was the confession of the [Appellant].
>
> As [trial counsel] correctly answered, nothing else imaginable could have been done and, in fact, . . . no suggestion has been made as to what could have been done that wasn't done. And there is a good reason for that, because there is nothing.

We find nothing in the record to preponderate against the post-conviction court's findings. As previously noted, trial counsel stated that he employed a firearms expert to investigate the case. That expert concluded that the weapon recovered was the murder weapon as its shot pattern "fit with the evidence." Moreover, the Appellant testified at trial that the shotgun introduced into evidence "was the one that he used to shoot on August 21st, 2001."

## (2) Withdrawal of Motion for Change of Venue

Next, the Appellant contends that trial counsel was ineffective by abandoning his pursuit of a change of venue after filing a "Motion for Extension of Time to file Motion for Change of Venue."

The motion was ultimately withdrawn by trial counsel. The Appellant argues that trial counsel should have pursued the motion because the victim was an elected law enforcement official and was well known within the community, specifically arguing that even though there was no undue amount of publicity regarding the case, the mere fact that the alleged victim was a duly elected law enforcement official would be grounds enough to pursue a motion for a change of venue.

At the post-conviction hearing, trial counsel testified and explained his reasoning behind withdrawing the motion:

> We had no real basis to ask for a change of venue. . . . First, a personal preference. I really like Hancock County juries. Secondly, there is no major single news media coming out of Sneedville that barrages people day to day about cases that . . . tend to pollute the juries. And Hancock County is a large county. I felt we could get a fair trial.

The post-conviction court, in denying the Appellant's petition, found:

> Included in those pretrial motions was one for change of venue. This Court has ruled that the matter would be taken under advisement to see if a fair jury could be obtained in Hancock County, Tennessee, and although that motion was later withdrawn by defense counsel, the jury selection process shows beyond any doubt that the petitioner was able to obtain a fair jury in Hancock County, Tennessee.

The Appellant has failed to introduce any proof which would preponderate against the court's finding. Clearly, trial counsel was aware of possible venue problems and filed the appropriate motion. However, after review, trial counsel determined that he had no basis for seeking a change of venue. Clearly, the post-conviction court found no prejudice as it concluded that the Appellant obtained a fair and impartial jury. Thus, this issue is without merit.

## (3) Lack of Objection to Void Indictment

Lastly, the Appellant complains that trial counsel was ineffective in that he failed to object to the State's use of a void indictment. Specifically, the Appellant asserts that trial counsel should have filed a motion to dismiss the first degree murder indictment because "it included the word 'deliberate' which represented an 'additional element.'" As the State asserts, this issue is waived due to the Appellant's failure to include a copy of the indictment in the record. *See* Tenn. R. App. P. 24(b). Moreover, the Appellant fails to present any legal argument as to why the indictment is void because it contains the word "deliberate." *See* Tenn. R. Ct. Crim. App. 10(b). Accordingly, this issue is waived. Notwithstanding waiver, we conclude the issue is without merit.

The proof at the post-conviction hearing established that the first degree murder indictment included the word "deliberate." The post-conviction court entered the following findings relevant to this issue:

It is alleged that the indictment was void for a fatal defect in containing the requirement that the act of murder be found to be deliberate. . . .

. . . .

[T]his Court finds that the indictment is not void because it required an extra element of acting deliberately.  That would inure, in fact, to the petitioner's benefit if it were so charged but it was not charged to the jury.  If a motion had been raised to dismiss the indictment because of that, the motion would have been denied and no different result would have occurred.

The inclusion of the word "deliberate" in the indictment was mere surplusage and did not affect the validity of the indictment.  *See State v. Hill*, 954 S.W.2d 725, 727 (Tenn. 1997).  Indeed, the trial court properly instructed the jury with regard to the requisite elements of premeditated first degree murder; thus, no prejudice resulted.

## CONCLUSION

For the foregoing reasons, the Hancock County Criminal Court's dismissal of the Appellant's petition for post-conviction relief is affirmed.

_____
DAVID G. HAYES, JUDGE